Kevin M. Cochrane (Cal. Bar No. 255266)
kmc@williamscochrane.com
WILLIAMS & COCHRANE, LLP
836 57th Street, Suite 472
Sacramento, CA 95819
Telephone: (916) 431-0126

Attorneys for Plaintiff
PAUMA BAND OF MISSION INDIANS

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PAUMA BAND OF MISSION INDIANS**, a federally-recognized Indian tribe,<br><br>Plaintiff,<br><br>vs.<br><br>**GAVIN NEWSOM**, as Governor of the State of California; **STATE OF** CALIFORNIA; and **DOES 1 THROUGH 10**;<br><br>Defendants. | Case No.: 2:21-CV-01166-AWI-SKO<br><br>**PLAINTIFF PAUMA'S NOTICE OF PENDING MOTION FOR CONSOLIDATION IN RELATED CASE OF *BERRY CREEK* UNDER FEDERAL RULE OF CIVIL PROCEDURE 42(A)**<br><br>[Related Case: *Berry Creek Rancheria of Maidu Indians of California v. State of California et al.,* No. 21-02284 AWI SKO (E.D. Cal. filed Dec. 12, 2021)] |

**TO THE COURT, THE DEFENDANTS AND THEIR ATTORNEYS OR RECORD:**

Please take notice that earlier today the undersigned filed a motion to consolidate this action with the related one of *Berry Creek Rancheria of Maidu Indians of California v. State of California et al.*, No. 21-02284 AWI SKO (E.D. Cal. filed Dec. 12, 2021) under Federal Rule of Civil Procedure 42(a). A true and correct copy of the motion filed with the Court in *Berry Creek* is attached hereto as **Exhibit A**.

RESPECTFULLY SUBMITTED this 27th day of June, 2022

                                      PAUMA BAND OF MISSION INDIANS

                                      By: */s/ Kevin M. Cochrane*
                                      Kevin M. Cochrane
                                      kmc@williamscochrane.com
                                      WILLIAMS & COCHRANE, LLP
                                      836 57th Street, Suite 472
                                      Sacramento, CA 95819
                                      Telephone: (916) 431-0126

EXHIBIT A

Cheryl A. Williams (Cal. Bar No. 193532)
Kevin M. Cochrane (Cal. Bar No. 255266)
caw@williamscochrane.com
kmc@williamscochrane.com
WILLIAMS & COCHRANE, LLP
836 57th Street, Suite 472
Sacramento, CA 95819
Telephone: (916) 431-0126

Attorneys for Plaintiff
BERRY CREEK RANCHERIA

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BERRY CREEK RANCHERIA OF MAIDU INDIANS OF CALIFORNIA**, a federally-recognized Indian tribe,<br><br>Plaintiff,<br><br>vs.<br><br>**STATE OF CALIFORNIA**; **GAVIN NEWSOM**, as Governor of the State of California; and **DOES 1 THROUGH 10**;<br><br>Defendants. | Case No.: 2:21-CV-02284-AWI-SKO<br><br>**PLAINTIFF BERRY CREEK RANCHERIA'S NOTICE OF MOTION AND MOTION FOR CONSOLIDATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 42(A)**<br><br>**[Related Case:** *Pauma Band of Mission Indians v. Newsom et al.,* **No. 21-01166 AWI SKO (E.D. Cal. filed June 30, 2021)]**<br><br>Date:     August 1, 2022<br>Time:    1:30 p.m.<br>Dept:    2<br>Judge:   The Honorable Anthony W. Ishii<br><br>**ORAL ARGUMENT NOT REQUESTED** |

**TO THE COURT, THE DEFENDANTS AND THEIR ATTORNEYS OR RECORD:**

Please take notice that at 1:30 p.m. on August 1, 2022, or as soon thereafter as counsel may be heard, in Courtroom 2 on the 8th floor of the Robert E. Coyle United States Courthouse at 2500 Tulare Street, Fresno, California 93721, the Plaintiff Berry Creek Rancheria of Maidu Indians of California ("Berry Creek" or "Tribe") will and does hereby move the Court for an order consolidating this case for bad faith negotiation under the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2710 *et seq.*, against the State of California and Governor Gavin Newsom with the related case of *Pauma Band of Mission Indians v. Newsom et al.,* No, 21-01166 AWI SKO (E.D. Cal. filed June 30, 2021) pursuant to Federal Rule of Civil Procedure 42(a). This motion is based upon the accompanying memorandum of points and authorities, all evidence attached thereto or referenced therein, and any evidence presented in reply or at the hearing on the matter.

RESPECTFULLY SUBMITTED this 27th day of June, 2022

BERRY CREEK RANCHERIA

By: */s/ Kevin M. Cochrane*
Cheryl A. Williams
Kevin M. Cochrane
caw@williamscochrane.com
kmc@williamscochrane.com
WILLIAMS & COCHRANE, LLP
836 57th Street, Suite 472
Sacramento, CA 95819
Telephone: (916) 431-0126

| | |
|---|---|
| 1 | Cheryl A. Williams (Cal. Bar No. 193532) |
| | Kevin M. Cochrane (Cal. Bar No. 255266) |
| 2 | caw@williamscochrane.com |
| | kmc@williamscochrane.com |
| 3 | WILLIAMS & COCHRANE, LLP |
| | 836 57th Street, Suite 472 |
| 4 | Sacramento, CA 95819 |
| | Telephone: (916) 431-0126 |
| 5 | |
| 6 | Attorneys for Plaintiff |
| | BERRY CREEK RANCHERIA |

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BERRY CREEK RANCHERIA OF MAIDU INDIANS OF CALIFORNIA**, a federally-recognized Indian tribe, <br><br> Plaintiff, <br><br> vs. <br><br> **STATE OF CALIFORNIA; GAVIN NEWSOM**, as Governor of the State of California; and **DOES 1 THROUGH 10**; <br><br> Defendants. | Case No.: 21-CV-02284-AWI-SKO <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF BERRY CREEK RANCHERIA'S MOTION FOR CONSOLIDATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 42(A)** <br><br> **[Related Case:** *Pauma Band of Mission Indians v. Newsom et al.,* **No. 21-01166 AWI SKO (E.D. Cal. filed June 30, 2021)]** <br><br> Date: August 1, 2022 <br> Time: 1:30 p.m. <br> Dept: 2 <br> Judge: The Honorable Anthony W. Ishii <br><br> **ORAL ARGUMENT NOT REQUESTED** |

Case No.: 21-CV-02284-AWI-SKO

MEM. OF P. & A. ISO BERRY CREEK'S MOT. FOR CONSOLIDATION (RULE 42(A))

# INTRODUCTION

The Plaintiff Berry Creek Rancheria of Maidu Indians of California ("Berry Creek" or "Tribe") hereby files this motion to consolidate under Federal Rule of Civil Procedure 42(a) to join this action for bad faith negotiation against the State of California ("State") and Governor Gavin Newsom (collectively "State Defendants") with the like-action filed earlier by the Pauma Band of Mission Indians ("Pauma") in the summer of 2021. *See Pauma Band of Mission Indians v. Newsom et al.,* No. 21-01166 AWI SKO (E.D. Cal. June 30, 2021) ("*Pauma*"). As time has revealed, this Court has become the designated judge for hearing the multitude of "bad faith" suits filed by California tribes under the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 *et seq.*, against the State Defendants after the compact negotiations between the parties inevitably stalled. The first such case was brought by a collation of five tribes led by the Chicken Ranch Rancheria ("*Chicken Ranch*") in January of 2019, and, in the three-and-a-half years since, the Court has issued a finding of bad faith negotiation against the State Defendants and is now on the cusp of guiding the parties through the second stage of the statutorily-prescribed process for remedying bad faith cases – *i.e.*, baseball style arbitration – subject to finding an outside "mediator" who is both available and willing to take on the work. *See Chicken Ranch Rancheria of Me-Wuk Indians v. California,* No. 19-00024 AWI SKO (E.D. Cal. Jan. 4, 2019). Since the inception of this original case, ten other tribes have jumped into the fray and filed their own stand-alone suits against the State Defendants, which now cover the spectrum in terms of procedural postures – with some pending on summary judgment, others stayed, and yet others still in their infancy awaiting their initial scheduling conferences. *See Redding Rancheria v. California,* No. 21-00579 AWI SKO, Dkt. No. 32 (E.D. Cal. June 23, 2022) (order granting the parties' joint request to stay the matter for the time being).

Two such cases that fall into this final group are the instant one and the one brought by Pauma – both of which are being litigated by the undersigned. Each of these cases involves the standard claims of bad faith negotiation raised by the *Chicken Ranch* five that contend the State Defendants acted in bad faith during the course of the negotiations by seeking to impose certain regulatory terms in the ultimate compact, including California tort, environmental, labor, wage, and anti-discrimination laws. *Compare Chicken Ranch,* Dkt. No. 35-1, p. i *with Pauma,* Dkt. No. 1, p. 26 *and with Berry Creek,* Dkt. No. 1, pp. 40-41. The complaints in these two actions that are the subject of consolidation go much further than the

1          Case No.: 21-CV-02284-AWI-SKO
MEM. OF P. & A. ISO BERRY CREEK'S MOT. FOR CONSOLIDATION (RULE 42(A))

one in *Chicken Ranch* and raise a host of other claims that challenge the ways in which the State conducted the negotiations. For instance, there is the shared count or claim that alleges the State Defendants' refusal to confine the negotiations to the Office of the Governor – by involving the Legislature – is bad faith negotiation. *Compare Pauma,* Dkt. No. 1, p. 26 *with Berry Creek,* Dkt. No. 1, p. 40. And then there are also the identically-worded counts or claims excerpted below that contend the State Defendants' unwillingness to negotiate for forms of gaming that are either Constitutionally- or statutorily-authorized to some person, organization, or entity in the State of California also constitutes bad faith negotiation:

> **Count 11**: Refusing and otherwise failing to negotiate for forms of class III gaming that are allowed to Pauma under IGRA – including the specific games requested by the Tribe – on account of the lottery provisions in both Section 19(d) and Section 19(f) of Article IV of the California Constitution (see, e.g., ¶¶ 34-35, 40);
>
> **Count 12**: Refusing and otherwise failing to negotiate for forms of class III gaming that are allowed to Pauma under IGRA – including the specific games requested by the Tribe – on account of the cardrooms around the State of California commercially offering tile games (see, e.g., ¶¶ 36-37, 41);
>
> **Count 13**: Refusing and otherwise failing to negotiate for forms of class III gaming that are allowed to Pauma under IGRA – including the specific games requested by the Tribe – on account of nonprofits having the statutory ability to operate "controlled games" at fundraisers under Sections 19985 to 19987 of the Business and Professions Code (see, e.g., ¶¶ 38-39, 41);

Compare *Pauma,* Dkt. No. 1, p. 27 *with Berry Creek,* Dkt. No. 1, p. 41.

All told, the complaints filed by Pauma and Berry Creek raise at least **fifteen** common counts or claims of bad faith negotiation against the State Defendants. Without the benefit of consolidation, the undersigned would go into the initial scheduling conferences for these cases that are presently set for July 14th and July 28th with an eye on creating two distinct summary judgment processes – a reality that would burden the Plaintiffs by exacerbating an already onerous amount of work, penalize the Court by requiring it to comb through excessive amounts of briefing, and reward the State Defendants by providing it with two bites at the apple, as it seizes on the opportunity to double its oppositional argument for what are overwhelmingly the same sets of claims. Given this, the most prudent course of action is to permit consolidation and tie the procedural postures of these cases together in order to create just *one* summary judgment process with just *one* set of focused and informed briefs per side.

An approach like this best comports with this Court's general tendency to permit if not outright encourage consolidation of any cases that share common questions of fact or law. *See Does v. A.J. Boggs & Co.,* 2019 U.S. Dist. Lexis 29676, No. 19-0061 AWI BAM (E.D. Cal. Feb. 25, 2019) (order to show cause why cases should not be consolidated); *see also, e.g., Blount v. Bos. Sci. Corp.,* 2019 U.S. Dist. Lexis 142360, Nos. 19-0578 AWI SAB, 19-0583 AWI SAB, 19-0585 AWI SAB, 19-0588 AWI SAB (E.D. Cal. Aug. 21, 2019); *Etchegaray Farms, LLC v. Lehr Bros., Inc.*, 2018 U.S. Dist. Lexis 21160, No. 17-1449 AWI JLT (E.D. Cal. Feb. 7, 2018); *United States v. Coast Wood Preserving, Inc.,* 2018 U.S. Dist. Lexis 3199, No. 17-1720 AWI SAB (E.D. Cal. 2018); *Aluya v. Management & Training Corp.,* 2017 U.S. Dist. Lexis 124461, Nos. 13-1345 AWI JLT, 13-1209 AWI JLT, 13-1344 AWI-JLT (E.D. Cal. Aug. 7, 2017); *Felder v. Lakshimi,* 2015 U.S. Dist. Lexis 121594, No. 14-291 AWI JLT (E.D. Cal. Sept. 9, 2015); *Villarino v. SSA,* 2013 U.S. Dist. Lexis 106792, Nos. 13-00734 AWI SMS, 13-01021 LJO-SMS (E.D. Cal. July 30, 2013). This preference for combining cases to aid the functionality of the court system is even further supported by the stark imbalance between the population base and the number of judicial seats in this particular District. The General Accounting Office released a report in 1998 in which it explained that, as of 1990, the Eastern District had the second highest ratio of people (5,455,602) to judicial seats (7) – or 779,372:1. Unless a typographical error was present in this report, over the last third-century the Eastern District has actually lost a seat while gaining a huge influx of people from the Bay Area and other locales with either insufficient sun or affordable housing, which in turn likely cements the Eastern District as being the most congested federal judicial district in the United States. *See, e.g.,* General Accounting Office, *Federal Judiciary: Information on the Population and Case Filings Per Judgeship for U.S. District Courts* (Feb. 11, 1998), *available at* https://www.gao.gov/assets/ggd-98-57r.pdf (last visited June 25, 2022); *see also* Federal Reserve Bank of St. Louis – Economic Research, *Resident Population in Sacramento County, available at* https://fred.stlouisfed.org/series/CASACR5POP (last visited June 25, 2022) (explaining the population for Sacramento County has increased by at least 50% from the reported 1990 total of 1,075,819).

The direness of the judge shortage has even become a recurrent subject of conversation for Chief District Judge Mueller as she has sought to curry support for a Congressional fix, explaining just last year that the District has been in a judicial emergency for 20-plus years with each judge finding itself in

the Sisyphean position of being "condemned eternally to roll a boulder uphill, only to have it roll down again when it reaches the top." Ryan Knappenberger, Cronkite News, *Judge tells lawmakers Arizona federal courts are overloaded, overworked* (Feb. 24, 2021), *available at* https://cronkitenews.azpbs.org/2021/02/24/judge-tells-lawmakers-arizona-federal-courts-are-overloaded-overworked/ (last visited June 25, 2022). All of this culminated last fall in the issuance of a clarifying order that explained this District could not even assign new civil cases originating in the Fresno division to a district judge, the practical effect of which was that all matters in those cases were "effectively stayed until further notice." *Augustine Band of Cahuilla Indians v. State of California,* No. 21-01509 AWI SKO, Dkt. No. 7 (E.D. Cal. Oct. 28, 2021). What all of this means is that granting the motion for consolidation will aid the basic administration of justice – which just so happens to be the most important consideration in the analysis. *See Habtemariam v. Vida Capital Grp., LLC,* 2017 U.S. Dist. Lexis 20930 (E.D. Cal. 2017) (explaining "[t]he purpose of consolidation … is to enhance trial court efficiency by avoiding unnecessary duplication of proceedings and effort (citing, *e.g.*, *Enterprise Bank v. Saettele,* 21 F.3d 233, 235-36 (8th Cir. 1994))). On top of which, a helpful acknowledgement by the State Defendants in the first Joint Status Report that is already on the docket sinks any possible argument about countervailing prejudice – this is a case that will be resolved by a *judge* on summary judgment, not a *jury* at trial. *See* Dkt. No. 10, 5:2-3 ("The parties do not believe that scheduling pretrial and trial dates is necessary because the legal issues raised in this case should be fully adjudicated by the cross-motions for summary judgment."). With no trial to be delayed or jury to be confused, the State Defendants are incapable of pinpointing a legally-cognizable form of prejudice that could somehow outweigh the needs of the District (or the adverse party). *See Aluya,* 2017 U.S. Dist. Lexis 124461 at *9 (explaining prejudice under Rule 42(a) arises from significant delay in trial or jury confusion). When you get down to it, this is both the ideal case and ideal time for consolidation, which provides the Court with every reason it needs to grant the pending motion and consolidate the instant case and *Pauma* under this docket number.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 42(a) provides for consolidation of related lawsuits and states in pertinent part that "[i]f actions before the court involve a common question of law or fact, the court may:

(1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). The two central and interrelated purposes of consolidation are to "enhance trial court efficiency by avoiding unnecessary duplication of proceedings and efforts" and "guard[] against the risk of inconsistent adjudications." *Habtemariam,* 2017 U.S. Dist. Lexis 20930 at *7 (citing *E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998)). In deciding whether to consolidate, a court "weighs the savings of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause." *Blount,* 2019 U.S. Dist. Lexis 142360 at *6 (quoting *Huene v. United States,* 743 F.2d 703, 704 (9th Cir. 1984)). Even if some serious if not prejudicial inconvenience could potentially result, courts will often look to whether such inconvenience can be lessened in some way so consolidation can still go forward; for instance, where jury confusion is likely, courts can and do consider whether the risk of jury confusion "can be alleviated by utilizing cautionary [jury] instructions" and "controlling the manner in which [the parties' claims and defenses] are submitted to the jury for deliberation." *Id.* (quoting *Eghnayem v. Boston Scientific Corp.* 873 F.3d 1304, 1313-14 (11th Cir. 2017)). The frequent usage of such ameliorative measures goes to show that typically "consolidation is a favored procedure." *Id.* (citing, e.g., *In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg., & Sales Practices Litig.,* 282 F.R.D. 486, 491 (C.D. Cal. 2012)). Though consolidation ties cases together from a procedural standpoint, "the law is clear that an act of consolidation does not affect any of the substantive rights of the parties." *Id.* (quoting *J.G. Link & Co. v. Continental Cas. Co.,* 470 F.2d 1133, 1138 (9th Cir. 1972)).

## ARGUMENT

I. **THE *BERRY CREEK* AND *PAUMA* BAD FAITH NEGOTIATION CASES THAT INVOLVE THE SAME DEFENDANTS AND THE SAME COUNSEL ON EACH SIDE HAVE AT LEAST FIFTEEN COUNTS OR CLAIMS FOR RELIEF IN COMMON**

This Court issued an illustrative order on consolidation under Rule 42(a) just a few years ago in which it explained that the appropriate analysis is a two-step process that first looks at the existence of common questions of law or fact before turning to the propriety of consolidation. *See Blount,* 2019 U.S. Dist. Lexis 142360. The case in question is *Blount,* which was actually one of four cases filed by plaintiffs who claimed personal injuries as a result of being "implanted with a Lynx Suprapubic Mid-Urethral Sling System… in order to address stress urinary incontinence." *Id.* at *2-*3. Each one of these cases

1 concerned this product manufactured by the Boston Scientific Corporation and raised somewhere around
2 eleven personal injury causes of action under California law on account of the Lynx being "defective in
3 design, manufacture, and warning." *Id.* at *7. The first step in the analysis required little effort on the
4 part of the Court, as it noted there were "significant and substantial common issues of law and fact"
5 given that the plaintiffs complained the same product (*i.e.*, Lynx) made by the same defendant (*i.e.*, Boston)
6 ton) was responsible for the same injuries (*i.e.*, permanent urinary incontinence) that resulted in largely
7 the same causes of action (*i.e.*, negligence, strict products liability, breach of warranty, and misrepresentation).
8 *Id.* (citing, *e.g.*, *Campbell v. Bos. Sci. Corp.*, 882 F.3d 70, 74 (11th Cir. 2018) (similarly
9 explaining that four transvaginal mesh cases shared "many common questions of law and fact" where
10 the plaintiffs "experienced similar complications from an implanted Obtryx, each were diagnosed with/
11 being treated for stress urinary incontinence, each received the Lynx implant in West Virginia, and each
12 asserted the same products liability theories under West Virginia law."))). These similarities were more
13 than enough for the Court to proceed on to the second step of the analysis of whether consolidation was
14 proper in the case at hand.

15        What is worth noting is that the Court resolved the first step of the analysis by hewing to the
16 standard test and focusing upon the common questions of law and fact *despite* the Defendant – who was
17 vehemently opposed to the idea of consolidation – trying to reframe the analysis around the unique fact
18 patterns for each plaintiff. As to that, Boston Scientific opposed consolidation on a multitude of grounds,
19 including on account of the "differences between the [individual] Plaintiffs" in that they were allegedly
20 "implanted at a different age, in different years, by different doctors, and after individual consultations
21 with their doctors to determine the best course of treatment," and even "had dissimilar medical histories,
22 suffered from different concurrent problems unrelated to the Lynx, and suffered different injuries." *Id.* at
23 *5. None of this carried any weight in the first step of the analysis, though, as the Court still focused
24 upon the basic similarities between the cases rather than the alleged factual differences.

25        This is the same approach the Court used in another case named *Aluya* wherein arguably even
26 greater factual dissimilarities existed between the plaintiffs. *See Aluya*, 2017 U.S. Dist. Lexis 124461.
27 Therein, three one-time inmates at Taft Correctional Institution filed negligence actions against the operator
28 ator of the facility MTC after each one allegedly contracted Valley Fever. *Id.* at *3. This Court began the

discussion by citing to another case in which prisoners trying to redress alleged mental injuries were originally denied consolidation after the magistrate judge who first heard the motion "found that there were differences between the two actions in that each plaintiff alleged a different set of facts concerning his or her particular medical needs and the responses made by jail employees." *Id.* at *5 (citing *Young v. City of Augusta,* 59 F.3d 1160 (11th Cir. 1995)). The appellate court in this referenced case disagreed with the decision of the magistrate judge, though, and believed that consolidation was warranted, not only because the cases were filed close in time, assigned to the same district judge, and had a similar course of development, but because both cases required the plaintiffs to prove the same thing against the same defendants – namely that a "City custom, practice, or policy regarding the medical care of mentally ill inmates caused their damages." *Id.* (citing *Young,* 59 F.3d at 1169-70). Relying on the reasoning of the Eleventh Circuit, this Court granted consolidation and noted in the first step of the analysis that there "are universal questions to all three Plaintiffs," in that the cases "share the same core issues of whether MTC breached the duty of care it owed to Plaintiffs and whether the breach caused the Plaintiffs to contract Valley Fever and the related suffering and costs associated with the condition." *Id.* at *7. Again, the fact that the cases shared the same core attributes was enough to proceed on to the second and final step of the analysis.

      Here, the fundamental similarities between the cases are patent, as they involve the same class of plaintiffs represented by the same attorneys raising the same causes of action that arise under the same federal statute against the same defendants in order to obtain the same type of relief. As suggested in the introduction, an exhaustive discussion is unnecessary to discern the similarities between the two cases; one can tell as much by simply comparing the styling of just some of the various counts or claims of bad faith negotiation that are set forth in the operative complaints. Again, Berry Creek took issue with the State Defendants' refusal to negotiate for certain forms of gaming it believes it has a legal entitlement to operate on account of the lottery provisions in Article IV, Section 19 of the California Constitution, the card rooms' play of non-banked games *other than* card games, and the statutory scheme for nonprofit organizations' gambling-based fundraisers:

> **Count 11**: Refusing and otherwise failing to negotiate for forms of class III gaming that are allowed to Berry Creek under IGRA – including the specific games requested by the Tribe – on account of the lottery provisions in both Section 19(d) and Section 19(f) of

Article IV of the California Constitution (see, e.g., ¶¶ 51-52, 67);

**Count 12**: Refusing and otherwise failing to negotiate for forms of class III gaming that are allowed to Berry Creek under IGRA – including the specific games requested by the Tribe –on account of the cardrooms around the State of California commercially offering tile games (see, e.g., ¶¶ 53-54, 68);

**Count 13**: Refusing and otherwise failing to negotiate for forms of class III gaming that are allowed to Berry Creek under IGRA – including the specific games requested by the Tribe –on account of nonprofits having the statutory authority to operate "controlled games" at fundraisers under Sections 19985 to 19987 of the Business and Professions Code (see, e.g., ¶¶ 55-56, 68);

Dkt. No. 41:9-20. Pauma raised these same arguments and it did so with the exact same language, assuming one puts aside the numerical differences in certain pinpoint cites:

**Count 11**: Refusing and otherwise failing to negotiate for forms of class III gaming that are allowed to Pauma under IGRA – including the specific games requested by the Tribe – on account of the lottery provisions in both Section 19(d) and Section 19(f) of Article IV of the California Constitution (see, e.g., ¶¶ 34-35, 40);

**Count 12**: Refusing and otherwise failing to negotiate for forms of class III gaming that are allowed to Pauma under IGRA – including the specific games requested by the Tribe – on account of the cardrooms around the State of California commercially offering tile games (see, e.g., ¶¶ 36-37, 41);

**Count 13**: Refusing and otherwise failing to negotiate for forms of class III gaming that are allowed to Pauma under IGRA – including the specific games requested by the Tribe – on account of nonprofits having the statutory ability to operate "controlled games" at fundraisers under Sections 19985 to 19987 of the Business and Professions Code (see, e.g., ¶¶ 38-39, 41);

*Pauma,* Dkt. No. 1, p. 27. A simple comparison of the complaints in these two cases reveals that the general types of bad faith negotiation alleged by Berry Creek and Pauma are either precisely or virtually identical in Count 1, Count 2, Count 3, Count 4, Count 5, Count 6, Count 7, Count 8, Count 9, Count 10, Count 11, Count 12, Count 13, Count 14, and Count 15. *Compare Pauma,* Dkt. No. 1, pp. 24-26 *with Berry Creek,* Dkt. No. 1, pp. 39-41. This common core of **fifteen claims** between two cases having the same defendants and the same attorneys on both sides far exceeds that in either *Blount* and *Aluya*, and thus justifies proceeding to the second step of the consolidation test.

II. **CONSOLIDATION WILL ALLOW THIS COURT TO DEAL WITH JUST ONE SUMMARY JUDGMENT PROCESS AND THUS DEVOTE ITS FREED-UP RESOURCES TO HELP MANAGE THE "SIGNIFICANTLY OVERBURDENED DOCKET" OF THE EASTERN DISTRICT**

The analysis in the foregoing *Blount* opinion focuses the second step of the consolidation test on arguably the most important consideration – the needs of the District. Therein, this Court explains that

consolidation is a useful tool because "[i]t is well known that the Eastern District of California has a significantly overburdened docket and is in need of additional judges." *Id.* at *8. Just how overburdened is the docket in this District? The website for the United States Courts published a report earlier this year in which it explained the District has nearly 6,000 pending cases. *See* United States Courts, *U.S. District Courts – Civil Cases Filed, Terminated, and Pending* (Mar. 31, 2022), *available at* https://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables (last visited June 26, 2022). That is 6,000 cases that would normally be spread out amongst the six judicial seats, which during the relevant reporting period had upwards of three vacancies. Some of that has been corrected with District Judges Thurston and de Alba filling the seats held long ago by District Judges O'Neill and England, respectively, but that does not change the fact that a mass of six thousand pending cases is still largely being carried by just five district judges, one of whom assumed her seat less than a week prior to the filing of this motion. *See* United States Court of Appeals for the Ninth Circuit, *Senate Confirms Ana Isabel de Alba for Federal Judgeship in Eastern District of California* (June 21, 2022), *available at* https://cdn.ca9.uscourts.gov/datastore/ce9/2022/de%20Alba_Confirmed_CAE_Final.pdf (last visited June 26, 2022).

Again, the incongruity between the number of cases and number of judges has been a recurrent talking point for Chief District Judge Mueller, who told Bloomberg Law that the current case load is "crushing" and that "unless or until we get… additional judgeships… we will labor under a very heavy burden." Bloomberg Law, *California District Courts in 'Emergency' Await Biden Nominees* (July 28, 2021), *available at* https://news.bloomberglaw.com/us-law-week/california-district-courts-in-emergency-await-biden-nominees (last visited June 26, 2022). The Chief District Judge is hopeful that those extra judgeships will come by way of a Congressional bill, but with no such bill in sight, that means five district judges and a small number of dedicated senior and visiting district judges are tasked with taking on all new cases while simultaneously whittling down the huge backlog. What that means for present purposes is that granting this motion will at least free up this Court so it has the resources to take on at least one additional matter in that Sisyphean yet necessary task of effectively administering justice in this District.

The only real rebuttal the State Defendants can offer in opposition to consolidation is that com-

bining the cases would cause some ill-defined procedural problems down the line. It is important to remember, though, that both *Berry Creek* and *Pauma* are in almost identical procedural postures – with each plaintiff having its initial scheduling conference during the month of July and proceeding to disposition by cross-motions for summary judgment at some point thereafter. *See Berry Creek,* Dkt. Nos. 13 & 15; *Pauma,* Dkt. No. 22. The last portion of the foregoing sentence is particularly relevant for this discussion; the main cry of prejudice typically offered during argument on consolidation is that granting the motion will invariably confuse the jury by having it hear evidence that is admissible in one case but not another. *See, e.g., Blount,* 2019 U.S. Dist. Lexis 142360 at *4-*5. This concern is absent in the instant matter given that these cases will be decided not only by a judge, but a judge who is well versed in the intricacies of bad faith negotiation suits under IGRA. There is simply no possible debate on this point, as the State already admitted in the Joint Status Report presently lodged on the docket that the case "should be fully adjudicated by" a judge on "cross-motions for summary judgment." Dkt. No. 10, 5:2-3. The set-up of the two cases, in other words, eliminates any possibility of prejudice and makes the cases the ideal candidates for consolidation.

## CONCLUSION

For the foregoing reasons, the Berry Creek Rancheria of Maidu Indians of California respectfully requests that the Court grant the pending motion and consolidate the instant case with *Pauma* under this docket number.

RESPECTFULLY SUBMITTED this 27th day of June 2022

BERRY CREEEK RANCHERIA

By: /s/ *Kevin M. Cochrane*
Cheryl A. Williams
Kevin M. Cochrane
caw@williamscochrane.com
kmc@williamscochrane.com
WILLIAMS & COCHRANE, LLP
836 57th Street, Suite 472
Sacramento, CA 95819
Telephone: (916) 431-0126

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BERRY CREEK RANCHERIA OF MAIDU INDIANS OF CALIFORNIA**, a federally-recognized Indian tribe,<br><br>Plaintiff,<br><br>vs.<br><br>**STATE OF CALIFORNIA**; **GAVIN NEWSOM**, as Governor of the State of California; and **DOES 1 THROUGH 10**;<br><br>Defendants. | Case No.: 21-CV-02284-AWI-SKO<br><br>**ORDER ON PLAINTIFF BERRY CREEK RANCHERIA'S MOTION FOR CONSOLIDATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 42(A)** |

On June 27, 2022, Plaintiff Berry Creek Rancheria of Maidu Indians of California filed a motion to consolidate this action alleging bad faith negotiation against the Defendants State of California and Governor Gavin Newsom ("State Defendants") with a similar action pending before this Court entitled *Pauma Band of Mission Indians v. Newsom et al.,* No. 21-CV-01166 AWI SKO (E.D. Cal. filed on June 30, 2021) under Federal Rule of Civil Procedure 42(a) ("Rule"). This Rule provides for consolidation of related lawsuits and states in pertinent part that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). The two central and interrelated purposes of consolidation are to "enhance trial court efficiency by avoiding unnecessary duplication of proceedings and efforts" and "guard[] against the risk of inconsistent adjudications." *Habtemariam v. Vida Capital Grp.*, 2017 U.S. Dist. Lexis 20930, *7 (E.D. Cal. 2017) (citing *E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998)). In deciding whether to consolidate, a court "weighs the savings of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause." *Blount v. Bos. Sci. Corp.*, 2019 U.S. Dist. Lexis 142360, *6 (E.D. Cal. Aug. 21, 2019) (quoting *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984)). Typically, consolidation is a favored procedure. *See Blount,* 2019 U.S. Dist. Lexis 142360 at *6 (citing *In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig.,* 282 F.R.D. 486, 491 (C.D. Cal 2012)).

This Court has an extensive record of addressing motions for consolidation, and reviews them pursuant to a two-part test that first looks at the existence of common issues of law or fact before turning to the propriety of granting consolidation. *See*, *e.g*., *Blount,* 2019 U.S. Dist. Lexis 142360, Nos. 19-0578 AWI SAB, 19-0583 AWI SAB, 19-0585 AWI SAB, 19-0588 AWI SAB (E.D. Cal. Aug. 21, 2019). Here, a cursory review of the operative complaints in *Berry Creek* and *Pauma* shows they do indeed share common issues of law, as the "claim for relief" sections of these complaints appear to raise fifteen similarly-worded counts or claims of bad faith negotiation against the State Defendants. Moreover, as this Court stated in the *Blount* order, "[i]t is well known that the Eastern District of California has a significantly overburdened docket and is in need of additional judges." *Id.* at *8. The administrative situation that exists today is no better than the one in August 2019 when the *Blount* order was issued.

Given this, consolidation of cases that share common issues of law and fact – like the two at the center of this motion – is a useful tool to help the overburdened judges in this District manage their dockets and thereby provide justice in an effective manner. Therefore, the Court will order *Berry Creek* and *Pauma* consolidated.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The August 1, 2022 hearing on the motion to consolidate is VACATED;
2. Plaintiff's motion to consolidate is GRANTED;
3. The Clerk of the Court shall CONSOLIDATE *Berry Creek Rancheria of Maidu Indians of California v. State of California et al.,* 21-CV-02284 AWI SKO and *Pauma Band of Mission Indians v. Newsom et al.,* No. 21-CV-01166 AWI SKO under Rule 42(a);
4. All future filings and correspondences shall use case number 21-CV-02284 AWI SKO;
5. The Clerk shall administratively close *Pauma Band of Mission Indians v. Newsom et al.,* No. 21-CV-01166 AWI SKO;
6. The Clerk of the Court shall file a copy of this order in each separate case: *Berry Creek Rancheria of Maidu Indians of California v. State of California et al.,* 21-CV-02284 AWI SKO and *Pauma Band of Mission Indians v. Newsom et al.,* No. 21-01166 AWI SKO; and
7. This matter is referred to the Magistrate Judge for entry of a new scheduling order.

**IT IS SO ORDERED.**

Dated: _____     _____
                                          THE HONORABLE ANTHONY W. ISHII
                                          SENIOR UNITED STATES DISTRICT JUDGE